IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| STEVEN A. JOHNSON, | : | |
| Petitioner, | : | |
| | : | 1:16-cv-0162 |
| v. | : | |
| | : | Hon. John E. Jones III |
| WARDEN, USP LEWISBURG, | : | |
| Respondent. | : | |

## **MEMORANDUM**

### **November 21, 2017**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Steven A. Johnson ("Johnson"), a federal inmate housed at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania. He alleges that his due process rights were violated in the context of a disciplinary proceeding. The petition is ripe for disposition and, for the reasons that follow, will be denied.

### **I. BACKGROUND**

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent

intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3.

Regulations require the Warden to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full time staff member to represent him at the DHO hearing. *Id.* at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to submit names of requested witnesses and have them called to testify and to present documents. *Id.* at § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call

2

repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* at § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* at § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

On December 17, 2015, Johnson received Incident Report 2795102, charging him with violation of Prohibited Act Code 216, "Giving or offering an official staff member a bribe or anything of value." The Incident Report contains the following description of the incident:

> On December 17, 2015, at approximately 10:00 a.m. this officer was notified by treatment specialist staff of proposed in-appropriate [sic]conduct with a staff member. Specifically a program book was collected from inmate Johnson, Steven #44964-039 in cell J-214. Upon treatment specialist staff reviewing the contents of the material being submitted by Johnson the following was discovered. On the front cover of the book entitled "My Change Plan" Johnson wrote on a white label "pg. 13 is a concern." On page 13 of the handbook in the

3

> section titled "My concern about finances" Johnson wrote the following "Don't just read listen. You asked? I answered." After the area asking to describe your financial circumstances today. Johnson authored a paragraph that reads as follows. "Good question, there is control over finances in prison, how do you bring more in. * Tell you what, If you were willing to take an interest in my legal mail (asking staff to send his mail out of the institution so it is not monitored) being sent out and delivered to me and willing to locate public addresses (wants staff to supply him with addresses[)], I could get a better control on my finances. What do you say? (asking if staff are interested in his proposal) I'm a legit business man. Don't sike me psych me." It is evident that Johnson is writing in a manner in which he is attempting to bribe/compromise a Burea [sic] of Prison staff member to personally make sure his mail is carried out of the institution by a staff member in order to prevent it from being monitored as outlined in policy. Johnson is also proposing to pay the staff member by writing "I'm a legit business man". Insinuating he will pay for the staff member's services.

(Doc. 13-1, p. 5).

Johnson received notice of the DHO hearing on December 17, 2015, and, on that same date, staff advised him of his rights. (*Id.* at 6-9). On December 21, 2015, the UDC referred the matter to the DHO due to the seriousness of the alleged act and recommended that "to change negative behavior," the DHO apply "all appropriate attendant sanctions." (*Id.* at 5). He requested Counselor Diltz as his staff representative, but did not seek to call inmate witnesses. (*Id.*)

During the January 13, 2016, disciplinary hearing, the DHO noted that staff provided Johnson with written notice of the charges against him; the DHO affixed a copy of the advisement of rights form to his decision. (*Id.* at 11). The DHO documented that Johnson declined to appear for the hearing, declined to make a

4

statement, provided no documents for consideration, and presented no witnesses. (*Id.*)  A waiver of appearance form, which indicates that two staff members witnessed Johnson's waiver, executed on January 13, 2016, the day of the hearing, is attached to the DHO decision. (*Id.* at 11, 19).  The DHO also indicated that Johnson's chosen staff representative, J. Diltz, "met with Inmate Johnson prior to the DHO hearing, and discussed the specifics of the case.  Mr. Diltz stated inmate Johnson made no specific request of him as a staff representative in this case.  Mr. Diltz stated he had no firsthand knowledge of the incident in this case.  Mr. Diltz stated he had no further information to present, nor statement to make, regarding the case." (*Id.*at 11).

In finding that Johnson committed the act as charged, the DHO relied on the Incident Report, and corroborating documentary evidence in the form of a Report generated from the "SIS" Investigation, a December 17, 2015 Memorandum from Mandy Ball, Special Management Unit Treatment Specialist, and the "My Change Plan" book. (*Id.* at 12).  The DHO also based his finding on the fact that Johnson declined to appear at the hearing, did not make a statement, and failed to provide the DHO with any documentary evidence to review. (*Id.*)

In sanctioning Johnson with a disallowance of twenty-seven days good conduct time, 30 days disciplinary segregation, 90 days loss of commissary,

telephone and visiting privileges, and a monetary fine of $250.00, the DHO set forth the following rationale:

> Approaching staff members and asking them to introduce contraband into a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong Johnson's period of incarceration. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Finally, a monetary fine is imposed as a sanction, as all other sanctions previously imposed have had no deterrent effect with regard to inmate Johnson's repetitive commission of a variety of prohibited acts.

(*Id.* at 13).

## II. DISCUSSION

Johnson's claim, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of his confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Federal inmates possess a liberty interest in good conduct time. *See*

*Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

Johnson first argues that the failure of the DHO to hold a timely hearing violated his due process rights. (Doc. 1, p. 6). This argument is without merit as there is no due process requirement that an inmate be provided a disciplinary hearing within fourteen days of the misconduct charges. He also contends that he was "taken to the DHO and [his] staff representative was not available. It was postponed. This was still after 14 days. The next day I was called to DHO and they never returned to take me. Officer Arnold on duty. Counselor Diltz staff rep." (*Id.* at 7). To the extent that he contends that he was denied a hearing, the record clearly indicates that the DHO held a hearing on January 13, 2016. It is also clear from the record that staff attempted to escort Johnson to his hearing and that

he declined to attend. (Doc. 13-1, p. 19). Although Johnson refused to sign the waiver, two staff members signed the document indicating that they witnessed his decision not to attend the hearing.

Johnson next argues that he never committed the prohibited act; "there is no mention of anything that is close to the prohibited act." (Doc. 1, p. 7). Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision. *Hill*, 472 U.S. at 455; *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

In challenging the sufficiency of the evidence, Johnson states that he did not commit the prohibited act. He argues that "all I did was answer a set of questions in a psychology book. I made no offer of anything monetary in my answer, for a charge of bribery to be even considered." (Doc. 14, p. 2). "The question was about 'finances' and I answered accordingly, still making no offer or even mentioning anything monetary." (*Id.*) In arriving at a finding of guilt, the DHO

specifically relied on the incident report, the investigation report, and the memorandum authored by the SMU Treatment Specialist, as well as Johnson's "My Change Plan" question and answer booklet that contained Johnson's handwritten answers. The DHO noted the following: "It is evident that you are writing in a manner in which you are attempting to bribe/compromise a Bureau of Prisons staff member to personally make sure your mail is carried out of the institution by a staff member in order to prevent it from being monitored as outlined in policy. You are also proposing to pay the staff member by writing "I'm a legit business man". Insinuating that you will pay for the staff member's services." (Doc. 13-1, p. 12). It is clear that the finding of guilt has some evidentiary support in the record before the DHO.

As concerns the severity of sanctions argument raised in his traverse (Doc. 14, p. 3), the sanctions permitted upon a finding of guilt of a "High Severity Level Prohibited Acts" offense include, *inter alia*, forfeit and/or withhold earned statutory good conduct time or up to 50% or up to 60 days, whichever is less, disallowance of between 25% and 50% of good conduct time credit available for a year, up to six months of disciplinary segregation, loss of privileges and monetary fine. 28 C.F.R. § 541.3. The sanctions imposed on Johnson, specifically, the loss of twenty-seven days of good conduct time, 30 days disciplinary segregation, the

loss of 90 days of commissary, telephone and visiting privileges, and a monetary fine of $250.00, were within the limits prescribed in this regulation.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense. *See Rummel v. Estelle*, 445 U.S. 263, 271–74 (1980)." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The penalties imposed, loss of good conduct time, loss of privileges, disciplinary segregation, and a monetary fine do not work an "atypical and significant hardship" on Johnson and do not serve to extend his confinement beyond the expected parameters of his sentence. *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

## III. <u>CONCLUSION</u>

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate Order will enter.